**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

**No. 12-2921**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Appeal from the |
| | ) | United States District Court |
| Plaintiff-Appellee, | ) | Central District of Illinois |
| | ) | At Springfield |
| v. | ) | |
| | ) | No.  11-CR-20036 |
| CHARLES GOODWIN, | ) | |
| | ) | Honorable Richard Mills |
| Defendant-Appellant. | ) | United States District Judge |

**BRIEF OF PLAINTIFF-APPELLEE**

JAMES A. LEWIS
*United States Attorney*

Linda L. Mullen
*Assistant United States Attorney*

*Office of the United States Attorney
1830 2nd Avenue, Third Floor
Rock Island, Illinois  61201
Telephone: 309-793-5884*

## TABLE OF CONTENTS

Page

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES. . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COMBINED STATEMENT OF THE CASE/STATEMENT OF FACTS. . . . . . . . . 2

SUMMARY OF THE ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENTS:

I.    Title 42 U.S.C. § 16913(d) Does Not Unconstitutionally Delegate
      Legislative Authority to the Executive Branch . . . . . . . . . . . . . . . . . . . . 13

II.   The District Court Committed Plain Procedural Error in
      Miscalculating the Advisory Guidelines Range for the Term
      of Supervised Release .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.  One of the Challenged Conditions of Supervised Release is
      Entirely Appropriate on this Record; the Remaining Three
      Conditions of Supervised Release Should be Vacated and
      Remanded for the District Court to Reconsider and Explicitly
      Justify. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

Page

Cases:

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).. . . . . . . . . . . . 19

*American Power & Light Co. v. SEC*, 329 U.S. 90 (1946). . . . . . . . . . . . . . . . . . . 16, 21

*Arciniega v. Freeman*, 404 U.S. 4 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Birzon v. King*, 469 F.2d 1241 (2d Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Carr v. United States*, 130 S.Ct. 2229 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Gall v. United States,* 552 U.S. 38 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Guerrero v. Holder*, 407 Fed.Appx. 964 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 17

*J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928).. . . . . . . . . . . . . . . 16

*Mistretta v. United States*, 488 U.S. 361 (1989). . . . . . . . . . . . . . . . . . . . . 15, 16, 20

*Nat'l Broadcasting Co. v. United States*, 319 U.S. 190 (1943) . . . . . . . . . . . . . . . . . 21

*Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935). . . . . . . . . . . . . . . . . . . . . 15, 19

*Roes v. Marcotte*, 193 F.3d 72 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Samson v. California*, 547 U.S. 843 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Santos v. United States*, 461 F.3d 886 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 17

*Touby v. United States*, 500 U.S. 160 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Albertson*, 645 F.3d 191 (3rd Cir. 2011).. . . . . . . . . . . . . . . . . . . . 43

*United States v. Alldredge*, 551 F.3d 645 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 27

iii

*United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . 18, 22

*United States v. Anderson*, 517 F.3d 953 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Anderson*, 604 F.3d 997 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . 24, 27

*United States v. Angle*, 598 F.3d 352 (7th Cir. 2010). . . . . . . . . . . . . . . . . . 29, 30, 33, 44

*United States v. Arch Trading Co.*, 987 F.2d 1087 (4th Cir. 1993). . . . . . . . . . . . . . . 16

*United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Bee*, 162 F.3d 1232 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . 40, 45

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Blinkinsop*, 606 F.3d 1110 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 31

*United States v. Boston*, 494 F.3d 660 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Brigham*, 569 F.3d 220 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Brown*, 662 F.3d 457 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 30, 31

*United States v. Burns,* 418 Fed.Appx. 209 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . 22

*United States v. Cote,* 504 F.3d 682 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cotton*, 535 U.S. 625 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Cotton,* 760 F.Supp.2d 116 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . 19

*United States v. Daniels*, 541 F.3d 915 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Deatherage*, 682 F.3d 755 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Demers*, 634 F.3d 982 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008).. . . . . . . . . . . . . . . . . . . . 3, 13, 16

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Gaither*, 2012 WL 3662967 (W.D.N.C. Aug. 24, 2012). . . . . . . . . . . 18

*United States v. Gibbs*, 578 F.3d 694 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 25-27

*United States v. Guy*, 174 F.3d 859 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Guzman*, 591 F.3d 83 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 17, 22

*United States v. Hanrahan*, 508 F.3d 962 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . 42

*United States v. Holm*, 326 F.3d 872 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 39, 40

*United States v. Honaker*, 2012 WL 2952367 (W.D.Pa. Jul. 19, 2012). . . . . . . . . . . . 18

*United States v. Kartchner*, 2012 WL 2884847 (D.N.D. Jul. 13, 2012). . . . . . . . . . . . 18

*United States v. Kelly*, 625 F.3d 516 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Kendrick*, 647 F.3d 732 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Kerr*, 472 F.3d 517 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Kidd,* 2011 WL 3352464 (E.D.Tenn. Jul. 5, 2011). . . . . . . . . . . . . . . . 19

*United States v. King*, 2012 WL 2308724 (D.S.D. Jun. 18, 2012). . . . . . . . . . . . . . . . 18

*United States v. Knutson*, 2012 WL 3023436 (D.Minn. Jul. 24, 2012). . . . . . . . . . . . 18

*United States v. Kuehl*, 2012 WL 844321 (N.D.Ia. Mar. 12, 2012). . . . . . . . . . . . . . . 19

*United States v. Lesure*, 2012 WL 2979033 (S.D.Ill. Jul. 19, 2012). . . . . . . . . . . . . . 18

*United States v. Lott*, 2012 WL 2048218 (D.Vt. Jun. 6, 2012) . . . . . . . . . . . . . . . . . . 18

*United States v. Love*, 593 F.3d 1 (D.C.Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Loy*, 237 F.3d 251 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Lunsford*, 2012 WL 828039 (W.D.Mo. Feb. 28, 2012). . . . . . . . . . . . 19

*United States v. Mark*, 425 F.3d 505 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Mason*, 510 F.Supp.2d 923 (M.D.Fla. 2007). . . . . . . . . . . . . . . . . . . 19

*United States v. McKissic*, 428 F.3d 719 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Mike*, 632 F.3d 686 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Mickelson*, 433 F.3d 1050 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Miller*, 665 F.3d 114 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Muhlenbruch*, 682 F.3d 1096 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . 44

*United States v. Musso,* 643 F.3d 566 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Parks,* 2012 WL 4872703 (1st Cir. Oct. 16, 2012) . . . . . . . . . . . . . . 17

*United States v. Perazza-Mercado*, 553 F.3d 65 (1st Cir. 2009). . . . . . . . . . . . 37, 39, 41

*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 35, 38

*United States v. Poole*, 550 F.3d 676 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Quinn*, 2012 WL 4962433 (7th Cir. Oct. 18, 2012) . . . . . . . . . . . . . . 28

*United States v. Rand,* 2012 WL 195017 (W.D.Tex. Jan. 23, 2012). . . . . . . . . . . . . . 19

*United States v. Reese,* 666 F.3d 1007 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Roach*, 2012 WL 4364321 (D.Neb. Sept. 21, 2012). . . . . . . . . . . . . . 18

*United States v. Rogers,* 468 Fed.Appx. 359 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . 17

*United States v. Sarraj*, 665 F.3d 916 (7th Cir. 2012)............................ 13

*United States v. Sharp*, 2012 WL 4764596 (W.D.Ark. Oct. 1, 2012). ............ 18

*United States v. Sherman*, 784 F.Supp.2d 618 (W.D.Va. 2011). ................. 19

*United States v. Simmons*, 343 F.3d 72 (2nd Cir. 2003) ........................ 40

*United States v. Simons*, 614 F.3d 475 (8th Cir. 2010) ............ 32, 36, 43, 45, 47

*United States v. Smith*, 655 F.3d 839 (8th Cir. 2011)..................... 42, 43, 47

*United States v. Stults*, 575 F.3d 834 (8th Cir. 2009) .......................... 36

*United States v. Sudbury*, 2012 WL 925960 (W.D.Wash. Mar. 19, 2012). ......... 19

*United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006) ....................... 31

*United States v. Tejeda*, 476 F.3d 471 (7th Cir. 2007). ......................... 29

*United States v. Thompson*, 653 F.3d 688 (8th Cir. 2011) ....................... 46

*United States v. Voelker*, 489 F.3d 139 (3rd Cir. 2007). ........................ 37

*United States v. Walters*, 643 F.3d 1077 (7th Cir. 2011). ....................... 43

*United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009) ...................... 17, 21

*United States v. Wiedower*, 634 F.3d 490 (8th Cir. 2011) .................... 32, 45

*United States v. Zobel*, 696 F.3d 558 (6th Cir. 2012) ........................ 44, 46

*Yakus v. United States*, 321 U.S. 414 (1944) ................................. 21

Statutes:

18 U.S.C. § 109B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 2250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2250(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 22, 25

18 U.S.C. § 2250(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2256(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

18 U.S.C. § 2256(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 33, 34

18 U.S.C. § 3559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 3559(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 3563(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3563(b)(1)-(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

18 U.S.C. § 3583(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18 U.S.C. § 3583(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 42, 44

18 U.S.C. § 3583(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

18 U.S.C. § 3583(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 16901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

42 U.S.C. § 16911 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 16913(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 16913(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

42 U.S.C. § 16913(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

42 U.S.C. § 16913(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 13, 14, 21, 22

42 U.S.C. § 16914(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22


Other Authorities:

28 C.F.R. § 72.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

72 Fed.Reg. 8896 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

72 Fed.Reg. 30210. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

73 Fed.Reg. 38063. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Brief for Appellant at 39-42, *United States v. Dixon,*
551 F.3d 578 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Crim.P. 52(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

U.S. Const., Art. I, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 5D1.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

USSG § 5D1.2(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

USSG § 5D1.2(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

USSG § 5D1.2(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

USSG § 5D1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG § 5D1.3(d)(7)(c)................................................ 42

USSG. § 5G1.1(b)................................................... 25

## JURISDICTIONAL STATEMENT

The jurisdictional summary in the defendant's brief is complete and correct.


## ISSUES PRESENTED FOR REVIEW

I. Whether 42 U.S.C. § 16913(d) amounts to an unconstitutional delegation of legislative authority to the Executive Branch, where Congress clearly delineated the general policy, the public agency that is to apply it, and the boundaries of the delegated authority.

II. Whether the district court committed plain error when it miscalculated the advisory Guidelines range for Goodwin's term of supervised release.

III. Whether the district court committed plain error in imposing a number of special conditions of supervised release.

# COMBINED STATEMENT OF THE CASE/STATEMENT OF FACTS[1]

This is a direct appeal of a criminal conviction and sentence. The course of proceedings and the dispositions were as follows.

## I. Indictment

On July 13, 2011, a federal grand jury charged the defendant, Charles Goodwin, with one count of failing to register as a sex offender, as required by the Sex Offender Registration and Notification Act (SORNA), in violation of 18 U.S.C. § 2250(a). (R.1) Specifically, the indictment alleged that Goodwin was required to register under SORNA in light of a 1994 Florida conviction, but failed to do so when he traveled from Florida to Illinois in September of 2008 and thereafter. (R.1)

## II. Motion to Dismiss Indictment & District Court's Ruling

On February 14, 2012, Goodwin filed a motion to dismiss the indictment, alleging that the SORNA, as applied to him, violated the Constitution's non-delegation doctrine. (R.15) Following a March 1, 2012, hearing before a magistrate judge, the magistrate judge recommended that the motion to dismiss

---

[1]References to the sentencing hearing are to "Sent.Tr.___"; references to the defendant's presentence report are to "PSR¶___; references to the documents in the record are to the docket number on the district court's docket sheet, *e.g.*, "R.__" and "d/e____"; references to the Brief of Defendant-Appellant are to "Def.Br.__"; references to the Appendix of the Brief of Defendant-Appellant are to "Def.App.__".

be denied. (d/e 3/1/12;d/e 3/5/12;R.18) On March 22, 2012, the district court

adopted the magistrate judge's recommendation and denied Goodwin's motion

to dismiss. (d/e 3/22/12;R.20) In so doing, the court stated in part, "it is

commonplace and constitutional for Congress to delegate to executive agencies

the fleshing out of criminal statutes by means of regulations."(quoting *United*

*States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008)*, overruled on other grounds sub*

*nom., Carr v. United States*, 130 S.Ct. 2229 (2010)). (Def.App.11)

## III. Conditional Plea of Guilty

On April 25, 2012, Goodwin entered a conditional plea of guilty before the

magistrate judge, reserving his right to appeal the denial of his motion to dismiss.

(d/e 4/25/12;R.21,R.23) The magistrate judge recommended acceptance of the

plea and, on May 16, 2012, the district court accepted the recommendation and

the plea. (d/e 4/25/12;R.25;d/e 5/16/12)

## IV. Sentencing

### A. Presentence Report (PSR) & Addendum

In the PSR, the probation officer set Goodwin's offense level at 10. (PSR¶26)

With respect to Goodwin's criminal history, the PSR detailed Goodwin's

numerous prior offenses. (PSR¶¶29-38) For example, in 1990, Goodwin was

convicted of Aggravated Battery in Panama City, Florida. According to the PSR,

Goodwin intentionally struck his wife with a closed fist "and caused great bodily

3

harm." (PSR¶32) Although Goodwin was initially sentenced to probation, after

violating the terms of his probation in 1991 and again in 1995, he was ultimately

sentenced to 4.5 years in the Florida Department of Corrections. (PSR¶32)

In 1993, Goodwin was convicted in Florida State Court of an Attempted Lewd

and Lascivious Act in the Presence of a Child. (PSR¶33) The PSR recounts the

following with respect to this offense:

> The defendant was represented by legal counsel. The defendant was
> originally charged with Sexual Battery on a Child Under 12 Years of
> Age.
>
> The Gulf County Sheriff's Office incident report indicates that on
> July 1, 1993, a male affiant advised that in 1991, defendant Goodwin
> committed sexual battery on the affiant's nine-year-old son, by
> holding down the minor and forcing him to suck the defendant's
> penis until the defendant ejaculated into the minor's mouth. The
> defendant then reportedly held the minor down and sucked the
> minor's penis. The minor was interviewed by the Child Protection
> Team and confirmed his father's statement. At the time of the
> incident, defendant Goodwin was at the minor's home, babysitting
> the minor. The minor said he was afraid to tell anyone about the
> incident, but finally disclosed the offense to his father on June 26,
> 1993.
>
> Defendant Goodwin does not agree with the version of the offense
> as detailed in the Gulf County Sheriff's Office incident report, and
> will submit a detailed statement to the Court explaining his verison
> of the events.
>
> In the plea and sentencing hearing held on February 8, 1994, [the]
> Gulf County Circuit Court Judge . . . asked [the] Assistant State's
> Attorney . . . to provide a vague, short factual basis of the offense.
> [The prosecutor] stated, "in some time during the year 1990, [the

minor] was being babysat, as I understand it, was the age of eleven, Mr. Goodwin committed a lewd and lascivious act in his presence in that he, there was some showing of a, at least a showing of the sexual organs of the male." The Court Responded, "Okay." Defense counsel . . . stated to the Court, "We'll stipulate the State has a prima facie case, Your Honor." Subsequently, the Court announced,"Then, Mr. Goodwin, you are adjudicated guilty of an attempted lewd and lascivious act in the presence of a child."

(PSR¶33)

In 2002, Goodwin was convicted of Possession of Cocaine in Champaign County Circuit Court in Urbana, Illinois. (PSR¶35) Goodwin received a sentence of 24 months of probation. (PSR¶35) A Petition to Revoke Probation was filed on April 14, 2005, alleging that Goodwin failed to report to the probation office as directed and was considered to be an absconder. (PSR¶35) Another Petition to Revoke was filed on August 10, 2005, alleging that Goodwin violated his probation by failing to pay his court costs and probation service fees. (PSR¶35) One year later, a Probation Violation Report was filed, alleging that Goodwin acknowledged to his probation officer that he had been hiding his addiction to crack cocaine. (PSR¶35) Although Goodwin was referred for residential treatment of his addiction, he was discharged unsuccessfully from that program after he indicated that he would rather go to prison than be forced to attend treatment. (PSR¶35) Two months later, another Probation Violation Report was filed after Goodwin admitted to using cocaine on September 23, 2006. (PSR¶35)

Goodwin's probation was terminated unsuccessfully on January 30, 2007. (PSR ¶35)

In December of 2006, Goodwin was convicted of Failure to Register as a Sex Offender in Douglas County Circuit Court in Illinois. (PSR¶36) Less than two years later, on July 19, 2008, Goodwin was convicted in Bay County Court in Florida of Attempted Failure of Sex Offender to Properly Register. (PSR¶37) Goodwin was sentenced to 3 months of probation and ordered to pay court costs and a fine. In October of 2008, a Violation of Probation was filed charging that Goodwin failed to report to his probation officer and failed to pay restitution and court costs. (PSR¶37)

The above-referenced criminal convictions resulted in a subtotal criminal history score of 10. (PSR¶39) Goodwin received 2 additional criminal history points because he committed the instant offense while on supervision for the 2006 failure-to-register offense and while subject to a probation violation warrant in the 2008 failure-to-register offense. *See* USSG § 4A1.1(d) and comment. (n.4) (PSR¶40)

The total of 12 criminal history points placed Goodwin in Criminal History Category V. (PSR¶41) Goodwin's Criminal History Category V combined with his offense level of 10 resulted in an advisory Guidelines imprisonment range of

21 to 27 months. (PSR¶76)

With respect to supervised release, the PSR determined the statutory range of imprisonment to be 5 years to life, pursuant to 18 U.S.C. § 3563(a)(5). (PSR¶79) The PSR determined the advisory Guidelines provision to also be 5 years to life with a lifetime term of supervised release recommended, pursuant to USSG § 5D1.2(b)(2) and (c). (PSR¶82)

An addendum to the PSR, filed on July 12, 2012, notified Goodwin that, "in addition to standard conditions of supervised release contemplated by the U.S. Sentencing Guidelines found at U.S.S.G. § 5D1.3, the Court may impose . . . special conditions pursuant to Federal Rules of Criminal Procedure 32(i)(1)(c)." The four special conditions challenged by Goodwin on appeal all appear in the addendum.

### B. District Court's Findings & Sentence

At the sentencing hearing on August 16, 2012, the district court adopted the PSR after Goodwin stated that he had no objections to the PSR and that the PSR was accurate. (Sent.Tr.15-16) The district court sentenced Goodwin to 27 months of imprisonment to be followed by a life term of supervised release. (Def.App. 22-23,30-34;R.28) In reaching this sentence, the district court considered the factors set out in 18 U.S.C. § 3553(a). The district court was particularly troubled by Goodwin's "significant criminal history." (Sent.Tr.38) The court noted that

Goodwin had amassed 12 criminal history points "for a variety of offenses, including aggravated battery, attempted lewd and lascivious act in the presence of a child, possession of a controlled substance" and two convictions for failure to register as a sex offender. (Sent.Tr.38)

The court next reviewed Goodwin's history of non-compliance with conditions of probation and sex offender registration requirements:

> The PSR reports that there are arrest warrants in Florida for Mr. Goodwin due to his failure to register as a sex offender. And the defendant's consistent disregard of the sex offender registration laws in Florida and Illinois is certainly an aggravating factor here today where he faces sentencing for violating the federal law.
>
> I also note in looking over the PSR, in particular, that at age 29, when he was convicted of aggravated battery in Panama City, Florida. Out of that conviction, where he was sentenced to probation, he then violated the probation and was sentenced to ten years. And then another violation was filed and it was admitted and he was sentenced to four and a half years.
>
> So he had the benefit of probation twice in that offense, and he didn't make [it] either time. And he was sent back and he had to serve four and a half.
>
> And then the next offense . . . Paragraph 33 . . . that is . . . the taproot here. Three months of community control, three years probation. Violation of probation filed. Pled no contest to violation and probation was revoked and sentenced to five years.
>
> Then at age 40, Paragraph 35, probation was extended there for 12 months, as was his entire offense – charge – sentence was to 245 months. And he violated that. It was extended 12 months. And probation was terminated unsuccessfully.

> And then at age 45, in Tuscola, Illinois, here in Douglas County,
> failure to register, body attachment, and the conditional discharge
> was terminated unsuccessfully.

(Sent.Tr.38-39)

The district court found some mitigating factors in Goodwin's "somewhat difficult childhood," problems with alcohol and drug abuse, and "some mental health issues" (Sent.Tr.39-40), but found those to be outweighed by aggravating factors, particularly with respect to Goodwin's "consistent refusal to comply with the sex offender registration laws." (Sent.Tr.38-39) The court concluded its analysis of the § 3553(a) factors by stating "I also think that deterrence and protection of the public are especially important sentencing factors in this particular case." (Sent.Tr.40)

The district court imposed, *inter alia,* the following four conditions[2] of supervised release that were set forth in the addendum to the PSR:

> **Condition 4:** You shall participate with the U.S. Probation Office's
> Computer and Internet Monitoring Program . . . during your entire
> term of supervision. . . . During this time . . . A) You shall install
> filtering software on any computer you possess or use, which will
> monitor and block access to sexually oriented websites. You shall
> allow the probation officer unannounced access to any computer
> you possess or use to verify that the filtering software is functional.
> You shall pay for the cost of the filtering software as directed by the
> probation officer. B) You shall submit to the search of your person,

---

[2] Goodwin did not object to the imposition of these conditions either before or during the sentencing hearing. He challenges the conditions for the first time on appeal.

automobile, and property under your control by the probation officer. You shall also allow the probation officer to conduct periodic, unannounced examinations of your computer equipment, internet capable devices, similar electronic devices, related computer peripherals, which may include retrieval and copying of all data from your device to ensure compliance with this condition, or removal of such equipment for the purpose of conducting a more thorough inspection.

**Condition 5.** You shall have no contact with any person under the age of 18 except in the presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer.

**Condition 6.** You shall neither possess nor have under your control any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material. This includes, but is not limited to, any material obtained through access to any computer and/or communication device, including a computer and/or communication device for employment purposes, or any material linked to computer or communication device access or use.

**Condition 7.** You shall not receive or transmit any sexually arousing material, including child pornography, via the Internet, nor visit any website, including chat rooms or bulletin boards containing any sexually arousing material, including child pornography.

On August 17, 2012, Goodwin filed a timely notice of appeal. (R.31)

10

## SUMMARY OF THE ARGUMENTS

Goodwin first argues that 42 U.S.C. § 16913(d) violates the non-delegation doctrine by authorizing the Attorney General to determine whether the Sex Offender Registration and Notification Act's (SORNA's) requirements apply to sex offenders who were convicted of their underlying sex offense before SORNA was enacted and implemented. *See* 42 U.S.C. § 16913(d). Goodwin acknowledges, however, that this argument has been squarely rejected by this Court. Goodwin provides no compelling reason for this Court to overrule its precedent, which is in keeping with every other Circuit to have decided the issue. Therefore, his challenge should be rejected.

Goodwin's next arguments have more traction. He argues that the district court committed plain error by miscalculating his supervised release advisory Guidelines range and then sentencing him to a life term of supervised release under the incorrect assumption that his term was a within-range sentence. We agree. On this record, it appears that the district court may have misunderstood the supervised release advisory Guidelines range. In addition, it is not clear that the miscalculation had no effect on the life term sentence of supervised release that the court imposed. Accordingly, Goodwin's life term sentence of supervised release should be vacated and the case remanded for the court to explicitly identify the correct 5-year advisory Guidelines supervised release range and to

11

select and adequately support a sentence either at or above the advisory range.

Finally, Goodwin challenges four conditions of his supervised release. He did not object to the conditions below, so this Court's review is for plain error only. One of the conditions, which prohibits Goodwin from having contact with minors without the prior approval of his probation officer, is easily supported on this record. The remaining three conditions generally involve restrictions on Goodwin's possession, receipt, transfer, or viewing of "sexually arousing" material. These conditions should be vacated and remanded for the district court to explicitly address why they are necessary in this particular case.

## ARGUMENTS

### I.    Title 42 U.S.C. § 16913(d) Does Not Unconstitutionally Delegate Legislative Authority to the Executive Branch

Goodwin argues that Congress violated the non-delegation doctrine when it delegated to the Attorney General the authority to specify whether SORNA's requirements apply to sex offenders who were convicted of their underlying sex offense before SORNA was enacted and implemented. *See* 42 U.S.C. § 16913(d). Goodwin acknowledges, however, that this argument was squarely rejected by this Court in *United States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008), *overruled on other grounds sub nom, Carr v. United States*, 130 S.Ct. 2229 (2010). Goodwin invites this Court to overrule *Dixon* and hold that the district court erred when it denied his motion to dismiss the indictment. (Def.Br.11-25) Because Goodwin provides no compelling reason for this Court to overrule *Dixon*, which is in keeping with every other Circuit to have decided the issue, his challenge should be rejected.

### A. Standard of Review

The constitutionality of a federal statute is reviewed de novo. *United States v. Cote,* 504 F.3d 682, 685 (7th Cir. 2007). This Court also reviews de novo questions of law in a district court's ruling on a motion to dismiss an indictment. *United States v. Sarraj*, 665 F.3d 916, 920 (7th Cir.), *cert. denied*, 132 S.Ct. 2412 (2012).

**B. Background**

In 2006, Congress passed the Sex Offender Registration and Notification Act (Part of the Adam Walsh Child Protection and Safety Act of 2006), otherwise known as SORNA. 18 U.S.C. § 2250. The Act imposes criminal penalties on anyone who — being required by the Act to register, being a convicted sex offender under either federal or state law, and traveling in interstate or foreign commerce — knowingly fails to register as a sex offender, unless he can prove that "uncontrollable circumstances" prevented him from doing so. 18 U.S.C. §§ 2250(a), (b)(1).

Congress instructed the Attorney General to "specify the applicability of the requirements of [the Act] to sex offenders convicted before [its enactment] or its implementation in a particular jurisdiction" and to "prescribe rules for the registration of any such sex offenders . . . who are unable to comply with" the requirement, also imposed by the Act, of registering before they are released from prison or, if they do not receive a prison sentence, within three days after being sentenced, and furthermore of re-registering within three days after a change of name, residence, employer, or student status. 42 U.S.C. §§ 16913(b), (c), and (d).

On February 28, 2007, the Attorney General promulgated an interim regulation under the authority granted him by § 16913(d), specifying that the

14

requirements of SORNA applied to all pre-enactment sex offenders. 72 Fed.Reg. 8896 (codified at 28 C.F.R. § 72.3). On May 30, 2007, the Attorney General made the interim regulation permanent by issuing proposed National Guidelines (the "SMART Guidelines"). 72 Fed.Reg. 30210. The Final Guidelines state that "SORNA applies to all sex offenders, including those convicted of their registration offense prior to the enactment of SORNA or prior to particular jurisdictions' incorporations of the SORNA requirements into their programs." 73 Fed.Reg. 38063.

### C. Analysis

The non-delegation doctrine is based on the principle of preserving the separation of powers between the three branches of government. *See Mistretta v. United States*, 488 U.S. 361, 371 (1989). It arises from Article I, Section I of the Constitution, which states that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I, § 1. The non-delegation doctrine prohibits Congress from "abdicat[ing] or . . . transfer[ring] to others the essential legislative functions with which it is [constitutionally] vested." *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935).

The Supreme Court has held, however, that the non-delegation doctrine does not prevent Congress from obtaining the assistance of the other branches of government. *See Mistretta*, 488 U.S. at 372. "So long as Congress 'shall lay down

15

by legislative act an intelligible principle to which the person or body authorized
to [exercise the delegated authority] is directed to conform, such legislative action
is not a forbidden delegation of legislative power.'" *Id.* (quoting *J.W. Hampton, Jr.,
& Co. v. United States*, 276 U.S. 394, 409 (1928)). Under the "intelligible principle"
test, a delegation of legislative power to another branch of government is
"constitutionally sufficient if Congress clearly delineates the general policy, the
public agency which is to apply it, and the boundaries of this delegated
authority." *Mistretta*, 488 U.S. at 372-73 (quoting *American Power & Light Co. v.
SEC*, 329 U.S. 90, 105 (1946)).

   In *Dixon,* this Court characterized as meritless the defendant's argument that
Congress's delegation of authority to the Attorney General to fill out the contours
of a statute violates the separation of powers. 551 F.3d at 583. Dismissing the
argument in short order, this Court explained, "It is commonplace and
constitutional for Congress to delegate to executive agencies the fleshing out of
criminal statutes by means of regulations."*Id.* at 584 (citing *Touby v. United States*,
500 U.S. 160, 165-69 (1991); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093-
94 (4th Cir. 1993)). Goodwin invites this Court to overrule *Dixon.* This Court,
however, requires a "compelling reason" to overrule circuit precedent, and
Goodwin fails to supply one. *See United States v. Kendrick*, 647 F.3d 732, 734 (7th

16

Cir. 2011), *cert. denied*, 132 S.Ct. 1159 (2012) (quoting *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006)). *See also Guerrero v. Holder*, 407 Fed.Appx. 964, 966 (7th Cir. 2011) ("[s]imply rehashing . . . previously considered arguments . . . does not provide a compelling reason to [overrule circuit precedent]"). Goodwin's arguments largely mirror those previously advanced by Dixon's attorney and squarely rejected by this Court. Brief for Appellant at 39-42, *Dixon,* 551 F.3d at 578 (No. 08-1438).

This Court finds itself in good company in holding that the congressional regulatory authorization in SORNA is constitutional, as every other Circuit to have addressed the issue agrees. *See, e.g., United States v. Parks,* 2012 WL 4872703, at *5 (1st Cir. Oct. 16, 2012) (rejecting non-delegation challenge, finding that "SORNA provided [an intelligible] principle by specifying the regulatory policy . . . and by effectively delegating to the Attorney General the judgment" about a discrete group of offenders); *United States v. Guzman*, 591 F.3d 83, 93 (2nd Cir. 2010) (rejecting non-delegation challenge and noting that Attorney General's authority under SORNA is "highly circumscribed"); *United States v. Rogers,* 468 Fed.Appx. 359, at *2 (4th Cir.), *cert. denied*, 2012 WL 1855947 (2012) ("The Attorney General's exercise of discretion is adequately cabined by [SORNA's] clear statement of purpose."); *United States v. Whaley*, 577 F.3d 254, 264 (5th Cir.

2009) ("SORNA's statement of purpose to 'establish a comprehensive national system' of sex offender registration to 'protect from sex offenders and offenders against children,' 42 U.S.C. § 16901, is an intelligible principle that guides the Attorney General in exercising his discretion") (internal marks omitted); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) ("Congress's delegations under SORNA possess a suitable intelligible principle and are well within the outer limits of the Supreme Court's nondelegation precedents.") (internal marks and citations omitted); *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009) ("We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in [SORNA].").

Moreover, every district court that has considered the issue has reached the same conclusion. *See, e.g. United States v. Sharp*, 2012 WL 4764596, at *2 (W.D.Ark. Oct. 1, 2012); *United States v. Roach*, 2012 WL 4364321, at *2 (D.Neb. Sept. 21, 2012); *United States v. Gaither*, 2012 WL 3662967, at *3 (W.D.N.C. Aug. 24, 2012); *United States v. Knutson*, 2012 WL 3023436, at *1 (D.Minn. Jul. 24, 2012); *United States v. Honaker*, 2012 WL 2952367, at *3 (W.D.Pa. Jul. 19, 2012); *United States v. Lesure*, 2012 WL 2979033, at *2 (S.D.Ill. Jul. 19, 2012); *United States v. Kartchner*, 2012 WL 2884847, at *2 (D.N.D. Jul. 13, 2012); *United States v. King*, 2012 WL 2308724, at *1 (D.S.D. Jun. 18, 2012); *United States v. Lott*, 2012 WL 2048218, at *3

18

(D.Vt. Jun. 6, 2012); *United States v. Sudbury*, 2012 WL 925960, at *2-4 (W.D.Wash. Mar. 19, 2012); *United States v. Kuehl*, 2012 WL 844321, at *3 (N.D.Ia. Mar. 12, 2012); *United States v. Lunsford*, 2012 WL 828039, at *5 (W.D.Mo. Feb. 28, 2012); *United States v. Rand,* 2012 WL 195017, at *4 (W.D.Tex. Jan. 23, 2012); *United States v. Sherman,* 784 F.Supp.2d 618, 622 (W.D.Va. 2011); *United States v. Cotton,* 760 F.Supp.2d 116, 134-35 (D.D.C. 2011); *United States v. Kidd,* 2011 WL 3352464, at *10 (E.D.Tenn. Jul. 5, 2011); *United States v. Mason*, 510 F.Supp.2d 923 (M.D.Fla. 2007).

In an attempt to support his argument, Goodwin points to the only two cases in history in which the Supreme Court struck down statutes as violative of the non-delegation doctrine, both handed down in 1935. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935). In those two cases, Congress failed to articulate any standards that would confine the delegated authority; thus, the branch to which Congress conferred the authority could impose its own conditions or add to and take from what was purported to effectuate Congress's policies. *See Schechter*, 295 U.S. at 538-39. In doing so, Congress delegated its entire set of functions so that the chosen branch could prescribe as it saw fit the policies that Congress sought to instill. *Id.; Panama Refining Co.*, 293 U.S. at 430 ("As to the transportation of oil production in excess of state permission, the Congress has declared no policy,

19

has established no standard, has laid down no rule. There is no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited.").

In *Mistretta*, the Supreme Court acknowledged that, since its 1935 decisions in *Schechter* and *Panama Refining Co.*, it has upheld "without deviation, Congress'[s] ability to delegate power under broad standards." 488 U.S. at 373 (citing cases). In fact, the Court noted that "[i]n recent years, [the Court's] application of the nondelegation doctrine principally has been limited to the interpretation of statutory texts, and, more particularly, to giving narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional." *Id.* at 373 n.7.

Goodwin argues that Congress failed to define or circumscribe the Attorney General's discretion and gave the Attorney General the exclusive, unbridled discretion to determine who should be subject to SORNA and who should not. (Def.Br.20-21) A plain reading of the statute, however, demonstrates that the delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of permissible delegation. Again, the modern test is whether Congress has provided an "intelligible principle" to guide the agency's regulations. *See Mistretta*, 488 U.S. at 372. The "intelligible principle" can

20

be broad. *See, e.g., Yakus v. United States*, 321 U.S. 414, 420 (1944) (upholding a delegation to fix commodity prices that are "generally fair and equitable and will effectuate the purpose of this Act"); *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190 (1943) (upholding a delegation to regulate in the "public interest"). *See also Am. Power & Light Co.*, 329 U.S. at 105 (stating that delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority").

With respect to SORNA, first, Congress clearly delineated the general policy underlying 42 U.S.C. § 16913(d). SORNA's statement of purpose, *i.e.*, to "establish[] a comprehensive national system" of sex offender registration to "protect the public from sex offenders and offenders against children," 42 U.S.C. § 16901, is an intelligible principle that guides the Attorney General in exercising his discretion. *See United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009).

Second, it is clear that the Department of Justice, through the Attorney General, is the agency designated to apply the policy. Section 16913(d) states that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . . " 42 U.S.C. § 16913(d).

Third, the boundaries of the authority delegated to the Attorney General are clear. In fact, the authority delegated is relatively narrow. *See Ambert*, 561 F.3d at 1214 ("Congress made virtually every legislative determination in enacting SORNA, which has the effect of constricting the Attorney General's discretion to a narrow and defined category"). Congress delineated: (1) the crimes that require registration (42 U.S.C. § 16911); (2) where the offender must register (§ 16913(a)); (3) the time period for and method of registration (§ 16913(b), (c)); (4) the type of information that registrants must provide (§ 16914(a)); and (5) the elements and penalties for the federal crime of failure to register (18 U.S.C. § 2250(a)). *See Guzman*, 591 F.3d at 93; *Ambert,* 561 F.3d at 1214.

The Attorney General's discretion was limited to determining only whether SORNA's requirements apply to the limited class of individuals who were convicted of covered sex offenses prior to its enactment. *See* 42 U.S.C. § 16913(d). In sum, "Congress did not give the Attorney General unbridled discretion to impose different registration requirements or to create a new criminal offense to be applied to pre-enactment sex offenders." *United States v. Burns,* 418 Fed.Appx. 209, 212 (4th Cir. 2011). Instead, Congress gave the Attorney General a clear and intelligible duty to act with regard to a narrow set of individuals, which it

22

specifically defined in the statute. Therefore, the delegation of authority to the

Attorney General in SORNA does not violate the non-delegation doctrine.

## II.   The District Court Committed Plain Procedural Error in Miscalculating the Advisory Guidelines Range for the Term of Supervised Release

Goodwin next argues that the district court committed plain error by miscalculating his supervised release advisory Guidelines range and then sentencing him to a life term of supervised release under the incorrect assumption that his term was a within-range sentence. (Def.Br.25-31) We agree.

### A. Standard of Review

Typically, this Court reviews questions of law involving the interpretation and application of the Sentencing Guidelines de novo. *United States v. Reese,* 666 F.3d 1007, 1021 (7th Cir. 2012). Where, as here, however, a party fails to raise an objection below, the issue is deemed forfeited, and this Court's review is for plain error only. Fed. R. Crim. P. 52(b); *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010).

### B. Analysis

The Sentencing Guidelines, at USSG § 5D1.2(a), provide advisory Guidelines ranges for supervised release, which are typically driven by the severity of the underlying conviction. Title 18 U.S.C. § 3559 categorizes offenses based on the maximum term of imprisonment. It specifically classifies offenses with a term of imprisonment of "ten or more years" as Class C felonies. 18 U.S.C. § 3559(a)(3). Goodwin's conviction for failure to register as a sex offender carries a statutory

maximum penalty of 10 years. *See* 18 U.S.C. § 2250(a), which places it in the

category of a Class C felony. A Class C felony in turn triggers an advisory term of

supervised release under the Guidelines of "[a]t least one year but not more than

three years . . . ." USSG § 5D1.2(a)(2). *See also* 18 U.S.C. § 3583(b)(2). However,

pursuant to 18 U.S.C. § 3583(k), Goodwin's failure-to-register conviction carries a

5-year mandatory minimum term of supervised release and a statutory

maximum term of life.

   This Court in *United States v. Gibbs* explained how Guidelines ranges are

calculated when a statutory minimum term is higher than a Guidelines range:

> When the question on the table relates to the imprisonment term, if
> the statutory minimum is higher than the Guideline range, the
> statutory minimum controls. *See* U.S.S.G. § 5G1.1(b), *see, e.g., United
> States v. Poole*, 550 F.3d 676, 678 (7th Cir. 2008). The same principle
> applies to supervised release. In keeping with that idea, § 5D1.2(c) of
> the Guidelines provides that "[t]he term of supervised release
> imposed shall be not less than any statutorily required term of
> supervised release." Thus, the statutory minimum term of
> supervised release defines either the bottom limit of the advisory
> Guideline range or the entire range (if it coincides with the top of the
> Guidelines range).

578 F.3d 694, 695 (7th Cir. 2009).

   Thus, here, because Goodwin's statutory minimum is higher than the

Guidelines range, the advisory Guidelines "range" became 5 years. USSG

§ 5D1.2(c). In *Gibbs*, this Court vacated a sentence that included a 10-year term of

supervised release where the district court identified the statutory range (five years to life) but failed to calculate the advisory Guidelines range (five years). *Id.* This Court found that because it was impossible to discern from the record whether the district court correctly calculated the supervised release advisory Guidelines range, Gibbs was entitled to a redetermination of his supervised release term. *Id.* at 695-96.

This case presents the same situation. As was the case in *Gibbs*, "the district court never acknowledged that the advisory range was five years." *Id.* ("the statutory minimum term of supervised release defines either the bottom limit of the advisory Guideline range or the entire range."). At sentencing, the district court merely stated, "[f]ollowing your release from custody, you shall serve a life term of supervised release." (Sent.Tr.42) And, the Probation Office, citing USSG §§ 5D1.2(b)(2) and (c), incorrectly determined the supervised release advisory Guidelines as 5 years to life (with a lifetime term recommended). (PSR¶82)

As Goodwin points out, § 5D1.2(b)(2) has no application in this case. That provision increases the Guidelines range "up to life, if the offense is . . . a sex offense." The application notes define a "sex offense" as an offense "perpetrated against a minor" and falling under one of several enumerated provisions of the United States Code, not including the chapter (Chapter 109B of Title 18) under

which Goodwin was convicted. Moreover, Goodwin's offense, failing to register under the SORNA, was not perpetrated against a minor, so the offense fails to meet the first criterion for a "sex offense" as well. *See United States v. Herbert*, 428 Fed.Appx. 37 (2nd Cir. 2011) (unpublished order) (failure to update sex offender registration under SORNA does not meet the Guidelines' definition of a "sex offense" under § 5D1.2(b)(2)).

To satisfy the procedural justice requirements as set out in *Gall v. United States*, 552 U.S. 38 (2007), a district court must correctly calculate the applicable Guidelines range; failure to do so is a "significant procedural error." *Gibbs*, 578 F.3d at 695-96. In other words, a sentencing judge "must correctly understand what the Guidelines recommend." *Anderson*, 604 F.3d at 1003 (quoting *United States v. Alldredge*, 551 F.3d 645, 647 (7th Cir. 2008)). On this record, it appears that the district court may have misunderstood the supervised release advisory Guidelines range. In addition, it is not clear that the miscalculation had no effect on the life term sentence of supervised release that the court imposed. *See United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008) ("An error is harmless if it did not affect the district court's selection of the sentence imposed."). Accordingly, Goodwin's life term sentence of supervised release should be vacated and the case remanded for the court to explicitly identify the correct 5-year advisory

27

Guidelines supervised release range and to select and adequately support a sentence either at or above the advisory range. *See United States v. Quinn*, 2012 WL 4962433 (7th Cir. Oct. 18, 2012) (Judge must discuss the interaction between the length and the terms of supervised release. The more onerous the terms, the shorter the period should be). Given Goodwin's past difficulty in complying with conditions of supervision, probation, and sex offender registration requirements, it may be appropriate for the district court to impose a lengthy term of supervised release. The court may do so, however, only after identifying the correct advisory range.

**III.    One of the Challenged Conditions of Supervised Release is Entirely Appropriate on this Record; the Remaining Three Conditions of Supervised Release Should be Vacated and Remanded for the District Court to Reconsider and Explicitly Justify**

Goodwin challenges four conditions of supervised release. One of the conditions, which prohibits Goodwin from having contact with minors without the prior approval of his probation officer, is easily supported on this record. The remaining three conditions generally involve restrictions on Goodwin's possession, receipt, transfer, or viewing of "sexually arousing" material. These conditions should be vacated and remanded for the district court to explicitly address why they are necessary in this particular case.

**A. Standard of Review**

Typically, this Court reviews special conditions of supervised release for an abuse of discretion. *United States v. Angle*, 598 F.3d 352, 360 (7th Cir. 2010). However, where, as here, a defendant fails to object to the imposition of the special conditions during his sentencing hearing, this Court reviews his claim only for plain error. *United States v. Tejeda,* 476 F.3d 471, 473-74 (7th Cir. 2007); *United States v. McKissic*, 428 F.3d 719, 721-22 (7th Cir. 2005) (citing *United States v. Guy*, 174 F.3d 859, 862 (7th Cir. 1999)).

In order for this Court to correct a plain error, the defendant must establish that there is: (1) an error; (2) that is plain; (3) that affects substantial rights and (4)

that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 626 (2002).

Goodwin acknowledges that he failed to object to the imposition of the special conditions at issue here. (Def.Br.37) He argues that the abuse-of-discretion standard is nevertheless warranted because "nothing in the record indicates that he had an opportunity to object prior to the imposition of the conditions." (Def.Br.37) Specifically, he claims that the "PSR said nothing of conditions of supervised release." The record belies his claim. The addendum to the PSR, issued July 12, 2012 – more than a month before the sentencing hearing – provided explicit notice that the district court might impose every condition that Goodwin now challenges.[3]

Moreover, as Goodwin candidly acknowledges, this Court recently rejected his view in *United States v. Brown*, 662 F.3d 457, 461 n.1. (7th Cir. 2011). The defendant in *Brown*, like Goodwin, argued that this Court should review the decision of the district court de novo because he had no chance to object to the ruling until it was already entered. *Id.* Also, like Goodwin, Brown cited Federal

---

[3] That is not to say that the district court must provide notice of conditions of supervised release. In fact, this Court has specifically rejected an argument that a district court must provide notice of its intent to impose special conditions of supervised release. *Angle,* 598 F.3d. at 361.

Rule of Criminal Procedure 51(a), which provides that "[e]xceptions to rulings or orders of the court are unnecessary." Finally, like Goodwin, Brown referenced Rule 51(b), which provides that "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." In rejecting Brown's argument, this Court explained that Rule 51(a) only "applies to issues that were raised before a judicial ruling." *Brown*, 662 F.3d at 461 n.1. This Court further explained that, on the other hand, "Rule 51(b) requires litigants seeking to preserve issues not raised prior to a judicial decision to raise those issues "when the court ruling or order is made or sought." *Id.* (citing *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("When the judge surprises counsel, it is far better to air and resolve the matter in the district court than to bypass available opportunities for correction and save the issue for appeal.")). Thus, here, where the supervised release conditions were not litigated at the sentencing hearing, Goodwin was obligated to object to any conditions imposed by the judge with which he disagreed in order to preserve the issue.

This analysis is in keeping with the holdings of other Circuits on this issue. *See United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010), *cert. denied*, 132 S.Ct. 1055 (2012) (defendant who fails to object to special conditions of supervised release faces plain error standard on appeal); *United States v. Sullivan*, 451 F.3d

884, 894 (D.C. Cir. 2006) ("Standing mute [after a sentence has been pronounced] is not an option, not if a litigant wishes to avoid a plain error standard of review on appeal."); *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011) (where defendant fails to object to a special condition of supervised release at the time it is announced, review is for plain error); *United States v. Simons*, 614 F.3d 475, 479 (8th Cir. 2010) (when a defendant fails to timely and specifically object to special conditions of supervised release at the sentencing hearing, review is for plain error only).[4] Thus, this Court should reject Goodwin's invitation to relax the plain error standard of review to un-objected to conditions of supervised release.

---

[4] Recently, some judges in the Eighth Circuit have advocated treating as waived (rather than forfeited) challenges to inadequately explained special conditions of supervised release where defendants failed to object at sentencing:

> [B]ecause special conditions of supervised release can be anticipated in every sex offender sentencing, and our standards for imposing them are now well-established, we should stop doing plain error review of *this procedural issue*. Liberal plain error review in which we parse the district court's explanation and then scrounge the record to find support for a perceived deficiency invites defense counsel not to object, since an objection gives the district court an opportunity to correct any deficiency. In our view, if counsel does not timely object that the reasons for imposing a condition have not been adequately explained, defendant has voluntarily relinquished the issue, and we should deem it waived, not merely forfeited.

*United States v. Deatherage*, 682 F.3d 755, 763 n.4 (8th Cir. 2012) (emphasis in original). *See also United States v. Wiedower*, 634 F.3d 490, 496 n.1 (8th Cir. 2011) (declining defendant's invitation to "relax the otherwise rigorous standards of plain error review" to correct un-objected to supervised release conditions).

**B. Legal Framework**

When imposing supervised release, a district court must include several mandatory conditions, may impose any condition set forth as a discretionary condition of probation, and may also include any other condition it considers to be appropriate. *See* 18 U.S.C. §§ 3583(d), 3563(b)(1)-(10). Additional conditions may be imposed so long as they are reasonably related to: (1) the defendant's offense, history, and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment. 18 U.S.C. § 3583(d); *Angle*, 598 F.3d at 360-61. They must also "involve no greater deprivation of liberty than is reasonably necessary" to effectuate sentencing purposes. 18 U.S.C. § 3583(d)(2).

**C. Analysis**

    1.      **Conditions 4, 6, and 7 should be vacated, and the supervised release portion of Goodwin's sentence remanded for the district court to explain its reasons for ordering the three conditions**

Goodwin challenges Condition 6, which prohibits him from possessing or having under his control "any material, legal or illegal that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material." (Def.Br.40-47) Goodwin also challenges Condition 7, which prohibits him from receiving or transmitting "any sexually arousing material, including child pornography, via the internet" and from visiting "any website, including chat

33

rooms or bulletin boards, containing any sexually arousing material, including child pornography." (Def.Br.47-48) In addition, Goodwin challenges Condition 4, which, in part, requires him to install filtering software on any computer he possesses or uses in order to monitor and block access to sexually oriented web sites. (Def.Br.49-53) These three conditions generally cover the possession, receipt, transmission, or viewing of items containing nudity or depicting or alluding to sexually arousing material, and provide a means for the probation officer to monitor compliance with the conditions. We believe that the conditions are sufficiently interrelated so that they ought to stand or fall together.

As noted, Goodwin did not object to these special conditions when they were proposed in the addendum to the PSR or at the time they were imposed, so this Court's review is limited to plain error. Goodwin claims that these conditions have no relation to the offense of conviction or his history and characteristics, involve a greater deprivation of liberty than is reasonably necessary, and run afoul of the First Amendment. (Def.Br.10,40-48)

To date, this Court has not evaluated whether forbidding all access to material containing nudity or "sexually arousing" content is reasonably related to, and narrowly tailored in any given case to achieve, the goals of specific sentencing factors in 18 U.S.C. § 3553(a). Nor has this Court considered the constitutional

implications of a broad ban on the possession of otherwise lawful materials.

Other Circuits have reached inconsistent results when evaluating analogous conditions under a plain error standard of review. For example, in *United States v. Poitra*, the Eighth Circuit addressed a challenge to a special condition that prohibited the defendant from possessing "any materials . . . depicting and/or describing 'sexually explicit conduct' as defined at 18 U.S.C. §§ 2256(2) and 2256(8)." 648 F.3d 884 (8th Cir. 2011). The defendant was a repeat sexual offender and the PSR included findings from a psycho-sexual evaluation, which determined that Poitra had a high likelihood of sexual re-offending. *Id.* at 890. The court found that while the district court plainly erred in failing to make the necessary individualized findings, "in light of [the defendant's] high risk of recidivism and history of sexual offenses, the reasons for the imposition of [the condition] are discernable from the record, and [therefore] the district court's failure to expressly state those reasons does not entitle [the defendant] to relief under plain-error review." *Id.*

Other cases have upheld similar conditions on plain error review. *See, e.g., United States v. Brigham,* 569 F.3d 220, 233-34 (5th Cir. 2009) (rejecting challenge to three-year special condition prohibiting possession of pornographic and "sexually oriented or sexually stimulating materials" where issue was raised for

the first time on revocation of supervised release and sex-offender treatment counselor testified during revocation proceeding that even sexually explicit images of adults would reinforce the possession of child pornography underlying defendant's federal conviction); *United States v. Miller,* 665 F.3d 114, 136-37 (5th Cir. 2011), *cert. denied*, 132 S.Ct. 2773 (2012) (district court did not plainly err in prohibiting defendant from purchasing, possessing, or using any "sexually stimulating or sexually oriented materials" for defendant convicted of transporting child pornography, where record showed that defendant's interest in adult pornography was intertwined with his sexual interest in minors); *United States v. Love*, 593 F.3d 1, 14, and n.5 (D.C.Cir. 2010) (rejecting plain-error challenge to lifetime ban on "pornographic, sexually oriented, or sexually stimulating materials" where defendant was convicted of possessing child pornography); *United States v. Stults*, 575 F.3d 834, 854-55 (8th Cir. 2009) (rejecting plain-error vagueness challenge to prohibition on accessing "any pornographic sexually oriented or sexually stimulating materials" because law was "unsettled"); *United States v. Daniels*, 541 F.3d 915, 927-28 (9th Cir. 2008) (rejecting plain-error challenge to lifetime ban on depictions or descriptions of "sexually explicit conduct" where defendant was convicted of possessing child pornography).

On the other hand, in *Simons*, the Eighth Circuit struck down on plain error review a condition identical to Condition 6 here in a SORNA case on the grounds that it involved a "greater deprivation of liberty than is reasonably necessary . . . ." 614 F.3d at 485. And, the First Circuit struck down a similar provision on plain error review in *United States v. Perazza-Mercado*, 553 F.3d 65, 74-79 (1st Cir. 2009). There, the court held that the sentencing court committed plain error by imposing a 15-year ban on "pornography of any kind" where court did not explain the connection between lawful, sexually explicit materials and defendant's conviction for engaging in sexual contact with a 9-year-old child. *Id.* at 75-77.

The *Perazza-Mercado* court left open the possibility that a pornography ban might be appropriate even where, as in this case, "pornography was not involved in the offense of conviction and there is no documented history of the defendant viewing such material." *Id.* at 76. Recognizing that "there may well be a reason to impose a pornography ban in such circumstances" the court found that the reason was simply not apparent from the record. *Id.* The record in this case suffers from the same infirmity.[5]

_____

[5] In *United States v. Voelker*, 489 F.3d 139, 150 (3rd Cir. 2007), the court considered and vacated (under an abuse-of-discretion standard) a pornography ban similar to the one at issue here. Like the court in *Perazza-Mercado*, the *Voelker* court acknowledged that a sentencing judge could, "perfectly consonant with the Constitution, restrict [an

37

On remand, the district court might be able to explain how a ban on possessing, viewing, transmitting, or receiving any "sexually arousing" material (even of adults) is necessary to prevent Goodwin's future criminal conduct. Given that Goodwin's criminal history includes sexually abusing a minor, the court may believe that preventing him from accessing sexually arousing materials is reasonably related to both the goal of deterring future criminal conduct against minors and the goal of protecting the public against further crimes involving the exploitation of minors. Perhaps it is the court's view that access to adult pornographic materials increases the likelihood that any individual convicted of sexual misconduct with a minor would re-offend. *See, e.g. Poitra*, 648 F.3d at 891 ("preventing a defendant – who has a demonstrated sexual interest in children – from possessing all sexually explicit material is reasonably related to preventing the defendant from committing sexual offenses in the future); *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) (concluding that a condition against accessing "any form of pornography, sexually stimulating or

---

offender's] access to sexually oriented materials." *Id.* (quotation marks and citation omitted). However, the court held, the restriction must have a nexus to the goals of supervised release: "We assume the [district] court believed a lifetime ban on possessing "sexually explicit materials" would further his rehabilitation and reduce the chances of recidivism . . . . However, nothing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material would cause Voelker to re-offend." *Id.* at 151.

sexually orienting material" was not overly broad in light of the defendant's history of sexual offenses against children and the need to deter his conduct in the future.); *United States v. Holm*, 326 F.3d 872, 874 (7th Cir. 2003) (affirmed without discussion special condition prohibiting possession of material containing nudity, where defendant's argument was so undeveloped that this Court came close to finding it waived).

Likewise, although the record does not support an inference that a computer played a role in the sexual misconduct that formed the basis for Goodwin's 1993 conviction, the facts underlying that conviction demonstrate extreme sexual deviance toward a young boy. Thus, Goodwin's history and personal characteristics may justify a targeted limitation on computer use involving websites and chat rooms geared toward sex, especially in light of research suggesting that convicted sex offenders are likely to re-offend. *See Perazza-Mercado*, 553 F.3d at 65 (citing *Roes v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999)).

Another condition of Goodwin's supervised release (as discussed below) forbids him from contact with minors without prior approval of the probation officer. The district court may have imposed the prohibitions in Conditions 4, 6, and 7, to essentially reinforce the real-world limitations contained in Condition 5. *See Perazza-Mercado*, 553 F.3d at 73. The computer restrictions in Condition 6, for

example, which come nowhere close to a complete Internet or computer ban, may be explained by the district court as a narrow and precise restriction that helps to protect the public as contemplated by § 3553, "and at the same time reflect the realities of [defendant]'s rehabilitation prospects." *Holm,* 326 F.3d at 879.

The problem here is that neither the Probation Office nor the court explained the reasoning behind imposing the conditions. In the majority of opinions cited above whereby similar conditions were upheld on plain error review, the reason for the restrictions was either explicitly stated by the sentencing court or abundantly clear from the record. Compare *United States v. Simmons*, where Simmons was convicted of transporting a minor in foreign commerce for the purpose of engaging in illegal sexual conduct and of producing sexually explicit videotapes. 343 F.3d 72, 74 (2nd Cir. 2003). Simmons's sentence involved a three-year term of supervised release, which included a condition prohibiting him from possessing or viewing "pornographic material." *Id.* at 74-77. In upholding the condition, the court explained that since Simmons often videotaped his sexual attacks upon his victims, it was reasonable for [the district court] to conclude that there was a connection between Simmons's viewing and possessing sexually explicit material and his criminal behavior." *Id.* at 82. And, in *United States v. Bee*,

162 F.3d 1232, 1234-35 (9th Cir. 1998), the Ninth Circuit upheld as reasonable a three-year ban on "sexually stimulating or sexually oriented material" where the defendant had been convicted of engaging in abusive sexual contact with a young child and the sentencing court explicitly found that the prohibition was necessary to address the defendant's "sexual deviance problem." Because the record contains insufficient information about the justifications for Conditions 6, and 7, the conditions should be vacated and the case should be remanded for resentencing.

The filtering software condition in Condition 4 provides the mechanism by which a probation officer monitors compliance with the type of restrictions outlined in Conditions 6 and 7. *See, e.g., Perazza-Mercado*, 553 F.3d at 74 (the requirement that a defendant install filtering software on his computer "reconciles [the] concern that a convicted sex offender could use the internet to continue a pattern of inappropriate behavior towards minors with the potential for legitimate uses of the internet that might be crucial to that individual's rehabilitation."). Because those conditions need to be reconsidered and explicitly

supported, Condition 4 should be vacated as well.[6]

## 2. The district court did not plainly err in imposing Condition 5, which restricts his access to minors

Finally, Goodwin challenges Condition 5, which requires that he have "no contact with any person under the age of 18, except in the presence of a responsible adult who is aware of the nature of [his] background and current offense, and who has been approved by the probation officer." (Def.App.33)

Goodwin challenges this condition as unrelated to the § 3553(a) factors on the grounds that his failure-to-register offense had "nothing to do with minors." (Def.Br.53) Courts, however, may impose special conditions of supervised release

---

[6] A portion of Condition 4 requires that Goodwin submit to a search by the probation officer of his "person, automobile or property under [his] control." This portion of Condition 4 is similar to a recommended special condition for sex offenses. USSG § 5D1.3(d)(7)(c). *See also* 18 U.S.C. § 3583(d) (sex offenders required to register under SORNA may be required to submit to warrantless, reasonable-suspicion searches and seizures "by any probation officer in the lawful discharge of the officer's supervision functions"). Condition 4 contains no reasonable suspicion requirement, but district courts may impose suspicionless search conditions. *See United States v. Smith*, 655 F.3d 839, 846-47 (8th Cir. 2011), *cert. granted, judgment vacated on other grounds by* 132 S.Ct. 2712 (2012); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007); *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007), *cert. denied*, 132 S.Ct. 362 (2011). In light of Goodwin's history of evading authorities, the district court did not plainly err by ordering broadened monitoring. *Smith*, 655 F.3d at 839, 846-47 (district court acted within discretion by enabling suspicionless monitoring as condition of supervised release given defendant's history of evading authorities). *Cf. Samson v. California*, 547 U.S. 843, 854 (2006) ("Imposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality.") (citation omitted). Thus, to the extent that this Court can carve out this portion of Condition 4, we believe that it passes muster under plain error review.

not directly related to the offense for which the defendant is being sentenced where "the special conditions are related to another offense that the defendant previously committed." *United States v. Kelly*, 625 F.3d 516, 519 (8th Cir. 2010), *pet. for cert. filed* (Oct. 5, 2012) (No. 12-6667). Moreover, it is well-settled that a "defendant's sexual abuse of a minor is an important factor in determining the propriety of a no-contact condition with minors." *United States v. Walters*, 643 F.3d 1077, 1081 (7th Cir. 2011). *See, e.g., Smith,* 655 F.3d at 847 (no-contact-with-minors supervised release condition affirmed for defendant convicted of SORNA offense because defendant had previously been convicted of sexually abusing a minor); *Simons*, 614 F.3d at 481 (on plain error review, upholding prohibition on contact with children by a SORNA violator, noting that requiring prior approval from probation officer was reasonable and noting that "in many of our cases affirming no-contact conditions, we have cited a defendant's history of sexual abuse of minors as a factor in our decisions"); *United States v. Mark,* 425 F.3d 505, 508 (8th Cir. 2005) (district court acted within its discretion in prohibiting a defendant from contacting any minors, including his own children, without the prior approval of the probation office in part because he had sexually abused a minor family member); *United States v. Albertson*, 645 F.3d 191, 200 (3rd Cir.), *cert. denied*, 131 S.Ct. 3045 (2011) (evidence that defendant convicted of receiving child

pornography had committed indecent assault of his minor step-daughter supported condition of supervised release prohibiting association with minors).

A condition is reasonably related to the statutory factors if it is tailored to the defendant's history and characteristics, the deterrence of criminal conduct, or the protection of the public from further crimes of the defendant. 18 U.S.C. § 3583(d); *Angle*, 598 F.3d at 360-61. While Goodwin characterizes his prior sex offense as a mere "brush" with a minor, the offense to which Goodwin refers involved Goodwin restraining a nine-year-old boy and forcing him to both accept and provide oral sex. (PSR¶33) At the time, Goodwin was in the boy's home babysitting him. (PSR¶33) Given Goodwin's history, the district court did not plainly err in imposing restrictions on his access to minors.[7] *See United States v. Zobel*, 696 F.3d 558, 574 (6th Cir. 2012) (no-contact with minors condition affirmed where defendant previously enticed two minors to perform sexual acts, as condition was reasonably related to the protection of the public).

Nor, contrary to Goodwin's claim, does the condition involve a greater

---

[7] Indeed, courts routinely impose no-contact conditions even on defendants who have no history of abusing minors. "[T]he absence of such a history is not necessarily determinative when deciding whether the district court erred in imposing contact conditions" in child pornography cases." *United Sates v. Muhlenbruch*, 682 F.3d 1096, 1103 (8th Cir. 2012) (quoting *United States v. Kerr*, 472 F.3d 517, 523 (8th Cir. 2006)). In doing so, courts have reasoned that "requiring prior approval before a convicted sex offender has contact with minors is a reasonable means of ensuring that such contact remains appropriate." *United States v. Mickelson*, 433 F.3d 1050, 1057 (8th Cir. 2006).

deprivation of liberty than necessary, particularly since Goodwin has repeatedly failed to register as a sex offender. (Sent.Tr.38,40;PSR¶¶36,37) The district court found at sentencing that "the defendant's consistent disregard of the sex offender registration laws in Florida and Illinois is certainly an aggravating factor here today . . . " (Sent.Tr.38), and concluded that "deterrence and protection of the public are especially important sentencing factors in this particular case." (Sent.Tr.40) The association restriction here involves no greater deprivation of liberty than is necessary to protect the public, to promote Goodwin's rehabilitation, and to deter him from future crimes by keeping him away from children and teenagers. *See Bee*, 162 F.3d at 1235-36 (condition that defendant have no contact with minors unless approved by his probation officer was reasonable because it was intended to promote the defendant's rehabilitation and protect the public).

Significantly, the condition is not a complete prohibition on Goodwin's interaction with minors. The condition allows Goodwin to have contact with minors in the presence of a responsible adult approved by the probation officer. *See Wiedower*, 634 F.3d at 498 ("in coming to our decisions [relating to prohibitions on contacting minors], we found it important that the prohibitions were not absolute, in that the defendant could always seek prior approval from

the probation office to contact minors . . . ."); *Simons*, 614 F.3d at 482 ("Moreover, we note that the condition is not a complete ban, as [the defendant] can still have contact with minors, including his own children, if he obtains permission from his probation officer."); *United States v. Thompson*, 653 F.3d 688, 692 (8th Cir. 2011) (no greater deprivation of liberty than is reasonably necessary where no-contact conditions allowed defendant to seek an exception to the condition through approval of probation officer). *See also United States v. Demers*, 634 F.3d 982, 987 (8th Cir. 2011) (no plain error in prohibition on *any* unsupervised contact with minors where defendant had a history of sexual abuse and domestic violence, was a registered sex offender, and had no children).

Goodwin complains that the condition is overbroad because it prohibits incidental and inadvertent contact with minors, which would preclude Goodwin from contact with family members who are not yet 18 years old. (Def.Br.54) Courts interpreting similar language, however, have found that associational conditions do not bar incidental interactions with minors unless they expressly so state. *See, e.g. Zobel*, 696 F.3d at 574 (a condition barring defendant from "having any contact with minor children under eighteen years old, even if supervised, unless he secures prior court approval" did not bar mere incidental interactions with minors); *United States v. Loy*, 237 F.3d 251, 268-69 (3rd Cir. 2001) ("At this

46

point, it is well established that associational conditions do not extend to casual or chance meetings"); *Arciniega v. Freeman*, 404 U.S. 4 (1971) (per curiam) (interpreting an associational condition to exclude certain casual encounters); *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) (same). Moreover, Goodwin does not have minor children himself, so the condition does not infringe any fundamental liberty. *See Smith*, 655 F.3d at 847 (while recognizing that the relationship between a parent and child involves a fundamental liberty interest, upholding no-contact condition where defendant had no minor children).

Moreover, contrary to Goodwin's claim that "nothing in the record supports such an overbroad restriction . . ." (Def.Br.54), again, Goodwin's criminal history includes an aggravated assault (wherein he struck a woman with a closed fist causing "great bodily harm" (PSR¶32)) and a violent sexual assault on a nine-year-old that he was babysitting. (PSR¶33) It requires no stretch to conclude that Goodwin ought not to be alone with children (including family members) under the age of 18. *See United States v. Musso,* 643 F.3d 566, 571 (7th Cir. 2011), *cert. denied*, 132 S.Ct. 1132 (2012) (no abuse of discretion for judge to order that defendant have "no supervised or unsupervised contact with any minor" where defendant's original offense involved possessing graphic visual depictions of a child engaged in a sex act); *Simons*, 614 F.3d at 482-83 (upholding a condition

prohibiting the defendant from coming within 500 feet of schools, parks, and playgrounds because the defendant had a history of committing crimes against children and thus the court had a duty to protect the public from future crimes).[8]

Goodwin's history suggests that he poses a significant risk to children; thus, the district court did not plainly err in restricting Goodwin's contact with minors as a special condition of supervised release.

---

[8] Goodwin also complains that the district court provided no explanation for such a broad prohibition. (Def.Br.55) Again, the district court stated that "deterrence and protection of the public are especially important sentencing factors in this particular case." (Sent.Tr.40)

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment but vacate and remand the portion of the sentence related to supervised release.

Respectfully submitted,

JAMES A. LEWIS
*United States Attorney*

By:    /s/ Linda L. Mullen                              
Linda L. Mullen
*Assistant United States Attorney*

*Office of the United States Attorney*
*1830 2nd Avenue, Third Floor*
*Rock Island, Illinois  61201*
*Telephone: 309-793-5884*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,825 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional spaced typeface using WordPerfect X5 with Book Antiqua font size 13.

/s/ Linda L. Mullen
Linda L. Mullen
*Assistant United States Attorney*

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2012, I electronically filed the Brief of

Plaintiff-Appellee with the Clerk of the Court using the ECF system which will

send notification of such filing to attorney for defendant-appellant Daniel T.

Hansmeier.


/s/ Linda L. Mullen
Linda L. Mullen
*Assistant United States Attorney*